IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

WILLIAM BOOKER,

      Appellant,

v.

SUMTER COUNTY SHERIFF'S
OFFICE/NORTH AMERICAN
RISK SERVICES,

      Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-4812

Opinion filed May 29, 2015.

An appeal from an order of the Judge of Compensation Claims.
Ellen H. Lorenzen, Judge.

Date of Accident: May 23, 2013.

Bill McCabe, Longwood, and Tonya A. Oliver, Trinity, for Appellant.

R. Stephen Coonrod of McConnaughhay, Duffy, Coonrod, Pope & Weaver, P.A., Tallahassee, and Tracey J. Hyde of McConnaughhay, Duffy, Coonrod, Pope & Weaver, P.A., Panama City, for Appellees.

PER CURIAM.

    Appellant, William Booker, seeks reversal of the order denying him workers' compensation benefits. Finding no error, we affirm the order in its entirety. Four of

the five issues raised by Appellant were challenges to the judge's evidentiary rulings grounded in section 90.702, Florida Statutes, establishing what is commonly referred to as the Daubert test for the admissibility of expert scientific testimony. We write to address the steps necessary for that analysis.

Background

In Giaimo v. Florida Autosport, Inc., 154 So. 3d 385, 387-88 (Fla. 1st DCA 2014), we addressed the Daubert test and outlined Florida's adoption of that standard:

> In 2013, the Florida Legislature modified section 90.702 "to adopt the standards for expert testimony in the courts of this state as provided in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), and to no longer apply the standard in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923)[.]" *See* Ch. 13–107, § 1, Laws of Fla. (2013) (Preamble to § 90.702). As amended, section 90.702 now provides:
>
> > If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:
> >
> > (1) The testimony is based upon sufficient facts or data;
> >
> > (2) The testimony is the product of reliable principles and methods; and
> >
> > (3) The witness has applied the principles and methods reliably to the facts of the case.

2

§ 90.702, Fla. Stat. The Legislature's adoption of the *Daubert* standard reflected its intent to prohibit "pure opinion testimony, as provided in *Marsh v. Valyou,* 977 So. 2d 543 (Fla. 2007)[.]" Ch. 13–107, § 1, Laws of Fla; *see* Charles W. Ehrhardt, 1 Fla. Prac., Evidence § 702.3 (2014 ed.) ("In adopting the amendment to section 90.702, the legislature specifically stated its intent that the Daubert standard was applicable to all expert testimony, including that in the form of pure opinion.") (footnote omitted).

Timeliness of Motion

When engaging in a Daubert analysis, the judge's role is that of the evidentiary "gatekeeper," that is, the one who determines whether the expert's testimony meets the Daubert test. See Daubert, 509 U.S. at 597. See also Kumho Tire, 526 U.S. at 152; Joiner, 522 U.S. at 142. The purpose of the gatekeeping requirement is to ensure an expert "employs in the court room the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. Federal courts, which have long relied on the Daubert standard, have held that a trial court has broad discretion in determining how to perform its gatekeeper function when addressing the admissibility of expert opinion testimony. See Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 780 (11th Cir. 2004). It follows that a judge's determination that an objection was not timely raised will be reviewed for abuse of discretion. Here, Appellant argued that the judge erred in finding his Daubert objection to the admissibility of the opinion of Appellees' independent medical examiner untimely.

3

Even though the Daubert test is new to Florida and few Florida cases have addressed it, Florida has long had in place a test for determining the admissibility of expert opinion testimony, and case law addressing the relevant procedural matters such as the necessity of raising timely objections based on the applicable test are instructive. In Dirling v. Sarasota County Government, 871 So. 2d 303, 304 (Fla. 1st DCA 2004), this Court was asked to review a judge's denial of the appellant's request for a Frye hearing. In reversing the judge's denial of the request, the Dirling court focused on when the appellant became aware that the appellee's expert's opinion was based on specific scientific studies. Id. Because the appellant became aware of the basis for the opinion only at the final hearing, a Frye motion raised at that time was timely. Id. at 306.

Here, Appellant was aware in April 2014, when Dr. Nocero's report (the IME) was prepared, that the doctor was relying on various studies in support of his opinion. This was again made clear to Appellant in early May when Dr. Nocero's deposition was taken. Notwithstanding, Appellant first raised his Daubert objection two weeks before the final hearing and only moved to strike the testimony by motion in limine filed on September 24, four days before the final hearing. On these facts, the judge determined that the objection was untimely. Using the Dirling court's analysis, Appellant should have raised his challenge when the report was received, or promptly thereafter, and certainly by the time of the May deposition.

4

This is in keeping with federal case law addressing similar situations. The failure to timely raise a Daubert challenge may result in the court refusing to consider the untimely motion. See Feliciano-Hill v. Principi, 439 F.3d 18, 24 (1st Cir. 2006) (explaining "[p]arties have an obligation to object to an expert's testimony in a timely fashion, so that the expert's proposed testimony can be evaluated with care"). See also Alfred v. Caterpillar, Inc., 262 F.3d 1083, 1087 (10th Cir. 2003) (explaining that "because *Daubert* generally contemplates a 'gatekeeping' function, not a 'gotcha' junction [sic]," untimely *Daubert* motions should be considered "only in rare circumstances"); Club Car, Inc., 362 F.3d at 780 ("A *Daubert* objection not raised before trial may be rejected as untimely.").

## Facial Sufficiency of Motion

Once it is determined that the objection was raised in a timely matter, the gatekeeper must determine whether the objection was sufficient to put opposing counsel[1] on notice so as to have the opportunity to address any perceived defect in the expert's testimony. Depending on the specific basis for the challenge, the objection should include, for instance, citation to "conflicting medical literature and expert testimony." Tanner v. Westbrook, 174 F.3d 542, 546 (5th Cir. 1999)

---

[1] The burden of proof to establish the admissibility of the expert's testimony is on the proponent of the testimony, and the burden must be established by a preponderance of the evidence. See Daubert, 509 U.S. at 592 n.10; McCorvey v. Baxter Healthcare Corp., 298 F. 3d 1253, 1256 (11th Cir. 2002).

(superseded in part by rule on other grounds in <u>Mathis v. Exxon Corp.</u>, 302 F.3d 448, 459 n.16 (5th Cir. 2002)). Setting forth unsubstantiated facts, suspicions, or theoretical questions regarding the expert's qualifications are not sufficient. <u>See</u> <u>Rushing v. Kansas City Ry.</u>, 185 F.3d 496, 506 (5th Cir. 1999) (superseded by statute on another ground as noted in <u>Mathis</u>, 302 F.3d at 459 n.16). Here, the judge below explained, correctly, that the general objection at the start of Dr. Perloff's deposition (the judge's appointed expert) was insufficient, as <u>Daubert</u> objections must be directed to specific opinion testimony and "state a basis for the objection beyond just stating she was raising a <u>Daubert</u> objection in order to allow opposing counsel an opportunity to have the doctor address the perceived defect in his testimony." Nevertheless, the judge went on to consider the merits of Appellant's <u>Daubert</u> objections both to Dr. Nocero and Dr. Perloff.

Pure Opinion Testimony

By adopting the <u>Daubert</u> standard, the Florida Legislature, in its codification of the federal <u>Daubert</u> test, made clear that "pure opinion testimony" was no longer admissible. "Pure opinion testimony" is testimony based only on the personal experience and training of the expert. <u>See</u> <u>Marsh</u>, 977 So. 2d at 549. The Third District Court of Appeal, in <u>Perez v. Bell South Telecommunications, Inc.</u>, 138 So. 3d 492 (Fla. 3d DCA 2014), assessed the admissibility of expert testimony under the <u>Daubert</u> test. In doing so, it reviewed the "pure opinion" testimony exception to

6

the Frye test—the exception specifically rejected by the Legislature in 2013. The Perez court identified examples of "pure opinion" testimony:

> [T]estimony of a neurologist, based upon clinical experience alone, that the failure of physicians to perform a caesarian operation on a mother in labor caused brain damage to her child at birth, *Gelsthorpe v. Weinstein,* 897 So. 2d 504, 510 (Fla. 2d DCA 2005); testimony of an ophthalmologist, based on experience and training, that the exposure of an eye to polychlorinated biphenyles (PCB's) causes cataracts, *Florida Power & Light Co. v. Tursi,* 729 So. 2d 995, 996–97 (Fla. 4th DCA 1999); testimony of medical experts of recognized relationship or association between trauma and the onset of fibromyalgia, based on clinical experience, *State Farm Mut. Auto. Ins. Co. v. Johnson,* 880 So.2d 721, 722–23 (Fla. 2d DCA 2004); *see generally* 24A Fla. Jur. Evidence, § 1104.

Id. at 496-97. The common thread running through these examples is that "pure opinion" testimony is based only on clinical experience and training; in contrast, the cornerstone of section 90.702 is relevance and reliability based on scientific knowledge. See Daubert, 509 U.S. at 590 (explaining that "the subject of an expert's testimony must be 'scientific knowledge'").

In Giaimo, 154 So. 3d at 387, this Court addressed an appellant's objection that a portion of an expert's opinion testimony was "pure opinion" testimony. When the expert was asked how he arrived at the questioned opinion, his response was that "when I was asked and thought about it, that is the answer that I came up with." Id. at 388. The Giaimo court concluded that "[t]his testimony provides no insight into what principles or methods were used to reach his opinion, and Dr. Lee did not demonstrate that he applied any such principles or methods to the facts of this

7

case." Id. In contrast, here, the judge found that the opinions were based on more than the physicians' clinical experience; specifically, the judge found that both doctors, in reaching their conclusions, relied on multiple published medical studies as well as their examinations of Appellant and a review of his medical records. Because the record supports that finding, the judge did not abuse her discretion[2] in rejecting any argument that the opinions of Drs. Nocero and Perloff were "pure opinion" testimony.

Daubert Test

The Daubert test as codified in section 90.702 requires (1) that the testimony be based on "sufficient facts or data"; (2) that it be a "product of reliable principles and methods"; and (3) that the expert "applied the principles and methods reliable to the facts of the case." The test for admissibility, given its broad application to all manner of expert opinion testimony, must be flexible. For assessing the reliability of the methodology used by the experts, United States v. Hansen, 262 F.3d 1217 (11th Cir. 2001), provides some of the flexible and non-exclusive factors which a judge may consider:

1. If it can be tested, has it?
2. Has it been subjected to peer review and/or publication?
3. If error rates can be determined, have they?
4. Are there standards controlling the technique's operation; if so, have they been maintained?

---

[2] An appellate court will review under an abuse of discretion standard a trial court's admission or exclusion of expert testimony. See Kumho Tire, 526 U.S. at 142.

5. Is the methodology generally accepted as reliable within the relevant scientific community?

Id. at 1234. A generally recognized exception, grounded in judicial notice, permits a judge to take judicial notice if the expert testimony has been deemed reliable by an appellate court. See Hamilton v. Commonwealth, 293 S.W.3d 413, 419 (Ky. Ct. App. 2009) ("If a party is offering expert testimony in a field of scientific inquiry so well established that *it has been previously deemed reliable by an appellate court*, the trial court may take judicial notice of the evidence. This 'relieves the proponent . . . from the obligation to prove . . . that which has been previously accepted as fact by the . . . appellate court. It shifts to the opponent of the evidence the burden to prove . . . that such evidence is no longer deemed scientifically reliable. The proponent may either rest on the judicially noticed fact or introduce extrinsic evidence as additional support or in rebuttal.'") (quoting Johnson v. Commonwealth, 12 S.W.3d 258, 262 (Ky. 1999) (emphasis in original)).

Here, the judge found the experts were well-acquainted with Appellant's medical history and current medical condition, they relied on published medical studies generally accepted within the medical community, and they applied the results of those studies to the facts of this case in reaching their opinions on causation. The judge did not abuse her discretion in admitting the experts' testimony.

AFFIRMED.

9

BENTON, CLARK, and MAKAR, JJ., CONCUR.