IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

RONALD FRANKEL,

     Appellant,

v.

LOXAHATCHEE CLUB, INC.,
AND            AMERISURE
INSURANCE COMPANY,

     Appellees.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-1289

_____/

Opinion filed November 5, 2015.

An appeal from an order of the Judge of Compensation Claims.
Mary A. D'Ambrosio, Judge.

Date of Accident: July 18, 2013.

Kimberly A. Hill of Kimberly A. Hill, P.L., Fort Lauderdale; and Thomas Hedler of
Wender, Hedler & Hessen, P.A., West Palm Beach, for Appellant.

Jeffrey L. Marks and Christine M. Tomasello of Pallo, Marks, Hernandez, Gechijan
and DeMay, P.A., Palm Beach Gardens, for Appellees.


PER CURIAM.

     In this workers' compensation appeal, Claimant essentially raises two issues:

(1) Whether the Judge of Compensation Claims' (JCC's) apportionment findings,

grounded in paragraph 440.15(5)(b), Florida Statutes (2013), are supported by

competent, substantial evidence, and if not, whether the award of prevailing party costs to the Employer/Carrier (E/C) was also made in error; and (2) if the JCC did not err in applying the apportionment provisions of paragraph 440.15(5)(b), then that provision is an unconstitutional violation of Claimant's right to access to courts.

Background

Claimant, age 68 at the time of the final hearing, injured his right shoulder, as well as his thoracic and lumbar spine, while assisting others in moving a heavy armoire — all three conditions were accepted as compensable by the E/C. Claimant testified that he had previously injured his right shoulder — he described the injury as having "ripped [his] rotator cuff" — approximately 15 to 20 years ago while trying out some new golf clubs. He further testified he received no subsequent treatment for the right shoulder after undergoing surgery and completing the post-surgery therapy. In addition, an MRI taken after the July 18, 2013, accident revealed the presence of some degenerative arthritis in the right shoulder bones, which Dr. Leotta, Claimant's authorized physician and the only medical expert to testify, described as age-appropriate. Claimant denied ever receiving any medical treatment for this degenerative condition. Dr. Leotta opined that 55% of the need for the recommended right shoulder surgical procedure was due to the workplace injury; 25% of the need was due to the pre-existing rotator cuff condition; and 20% was due to the degenerative changes.

2

In the order under review, the JCC found that the E/C met its burden to present medical evidence of the extent of Claimant's pre-existing conditions based on the MRI findings as Dr. Leotta testified that the degenerative arthritis and the prior decompression surgery represented 45% of the need for the recommended arthroscopic surgery. Finding that the E/C further met its burden to establish that an aggravation of a pre-existing condition occurred, the JCC concluded that the E/C was responsible for 55% of the cost of the right shoulder arthroscopy as maintained by the E/C. Flowing from that conclusion, the JCC awarded the E/C prevailing-party costs.

## Apportionment

A JCC's findings regarding apportionment, i.e., that a claimant suffered an aggravation of a pre-existing condition, are reviewed for record competent, substantial evidence. See Giaimo v. Fla. Autosport, Inc., 154 So. 3d 385, 387 (Fla. 1st DCA 2014). "Apportionment is an affirmative defense, and the E/C had the burden of proof to establish entitlement to the reduction in benefits." Id. Paragraph 440.15(5)(b), Florida Statutes (2013), provides, in relevant part:

> If a compensable injury . . . or need for medical care, or any portion thereof, is a result of aggravation or acceleration of a preexisting condition, . . . only the . . . medical treatment associated with such compensable injury shall be payable under this chapter, excluding the . . . medical conditions existing . . . at the time of the accident. . . . Medical benefits shall be paid apportioning out the percentage of the need for such care attributable to the preexisting condition.

3

(Emphasis added.)

Here, competent, substantial evidence supports the JCC's finding that the E/C is entitled to apportion 25% of the cost of the surgery as Claimant's pre-existing right shoulder condition was exacerbated/aggravated by the compensable injury. The DWC-25 dated June 9, 2014, lists a diagnosis of "right shoulder partial rotator cuff tear"; answers "yes" to the question of whether there is "a pre-existing condition contributing to the current medical disorder"; states that the "objective relevant findings . . . represent an exacerbation (temporary worsening) . . . of a pre-existing condition"; and states that the diagnosis is the MCC of the "reported medical condition . . . the treatment recommended . . . [and] the functional limitations and restrictions."

Competent, substantial evidence does not, however, support the JCC's finding that the E/C was entitled to apportion 20% of the cost of the surgery based on Claimant's pre-existing degenerative changes in the shoulder as there is no evidence that those degenerative changes were exacerbated/aggravated by the compensable injury. After a careful review of Dr. Leotta's deposition testimony, it appears that the E/C never asked the doctor whether Claimant's degenerative changes were aggravated by the compensable injury. Dr. Leotta did not include any mention of arthritis based on his reading of the MRI film, but did agree that a review of the radiologist's report indicated the presence of mild acromioclavicular arthritis. The

4

doctor testified that "[t]his is a normal finding for anyone over the age of 35." Upon being asked by the adjuster to address the major contributing cause of Claimant's shoulder-related issues, the doctor assigned 20% for "Arthritis/Degenerative Condition;" 55% for "Workers' Compensation Injury Noted Above"; and 25% for "Other Conditions/Factors/Previous Injuries."

Because it was the E/C's burden to establish its entitlement to apportionment, it was the E/C's burden to elicit specific testimony or other medical proof that Claimant's pre-existing degenerative changes were aggravated by the compensable injury. That question was never put to the doctor. As such, competent, substantial evidence does not support the JCC's finding that the E/C is entitled to apportion 45% of the total need for the surgery; only an apportionment of 25% finds support in this record.

Access to Courts

Constitutional issues, such as whether a statute violates a claimant's right to access to the courts, are reviewed *de novo*. See Medina v. Gulf Coast Linen Servs., 825 So. 2d 1018, 1020 (Fla. 1st DCA 2002). Due to the strong presumption of the constitutional validity of paragraph 440.15(5)(b), it should not be declared unconstitutional unless it is determined to be "invalid beyond a reasonable doubt." Id.

5

On this record, we cannot conclude that paragraph (5)(b) is invalid. We note that Claimant was not required, under this order, to pay any amount. There is no indication that Dr. Leotta would not perform the surgery at 55% of its total cost and, if not, that Claimant requested the E/C provide him with a physician that would accept 55%. There is also no indication that Claimant attempted to solicit testimony to the effect that the 55% of his overall condition related to the workplace injury could not be treated without treating the 45% that was unrelated; in other words, that treatment for the pre-existing condition was necessary because it was otherwise a hindrance to recovery from the workplace injury. See City of Miami v. Korostishevski, 627 So. 2d 1242, 1244-45 (Fla. 1st DCA 1993) (holding "hindrance to recovery" theory requires E/C to be responsible for treatment of condition not causally related to employment only if one of primary purposes of treatment is to remove hindrance to recovery from compensable condition, and only to extent treatment of unrelated condition is necessary to "effectively" treat compensable condition). Because Claimant failed to demonstrate beyond a reasonable doubt that his right to access to courts has been violated by paragraph 440.15(5)(b), we decline to find that provision unconstitutional as applied to him.

Accordingly, the order is AFFIRMED in part and REVERSED in part, and this matter is REMANDED for entry of an order finding the E/C entitled to apportion

6

out 25% of the cost of the recommended surgery.  In addition, the JCC should revisit her award of prevailing party costs based on the foregoing.

ROBERTS, C.J., THOMAS and RAY, JJ., CONCUR.